# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| JUAN CARLOS MORALES RODRIGUEZ, ) | |
| ) | |
|       **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 6:25-cv-00836-MDH |
| ) | |
| SHERIFF JIM C. ARNOTT, *et. al.*, ) | |
| ) | |
|       **Defendants.** ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") and has been denied the opportunity to seek a bond hearing. Pending is his Verified Petition for Writ of Habeas Corpus in which he argues federal statutes and the Due Process Clause require that he be granted a bond hearing. The Court agrees with Petitioner's statutory arguments, and on that basis, it concludes the Petition for Writ of Habeas Corpus should be **GRANTED**.

## BACKGROUND

Petitioner is a citizen of Mexico who has resided in the United States since January 2017. Petitioner, prior to his arrest, lived in Springfield, Missouri with his wife, Arely Jacqueline Reveles, who is a United States Citizen. The couple has been married since July 25, 2024. The couple has one child who is a year and a half old. Petitioner's wife has filed a Form I-130 Petition for Alien Relative application for him. That application has remained pending with USCIS since November 2024. On October 9, 2025, he was stopped by county sheriffs for a routine traffic stop. He and the other four occupants of the vehicle were determined to be in the United States without authorization and arrested under a 287(g) agreement. 3 days after he was arrested, Petitioner was turned over to ICE. He was placed into removal proceedings to appear before an IJ and was charged

1

with having entered the United States without inspection and being present without valid immigration documents pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), § 1182(a)(7)(A)(i).

Petitioner brought this proceeding, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, against (1) the acting assistant field office director for ICE Kansas City, (2) the Secretary of DHS, (3) the United States Attorney General, and (4) the Greene County Sheriff, all in their official capacities.[1] He asserts the Immigration and Nationality Act (the "INA"), Administrative Procedure Act ("APA"), and the Due Process Clause, all entitle him to the opportunity to seek release on bond. Respondents argue that Petitioner is not entitled to be considered for release, and the Court resolves the parties' arguments below.

## DISCUSSION

### I. Exhaustion of Remedies

Petitioner would like to be considered for release on bond. Respondent argues this Court should dismiss the petition for lack of jurisdiction as Petitioner has failed to exhaust administrative remedies in not requesting a bond hearing with an IJ. However, any request for such consideration is futile because the DHS and the Executive Office of Immigration Review ("EIOR") have taken the position that Petitioner's detention is mandatory and bond is categorically not permitted. Further, in September 2025, the Board of Immigration Appeals ("BIA") held that a person in Petitioner's circumstances is not entitled to consideration for release on bond. *See Matter of Yajure Hurtado*, 29&N Dec. 206 (BIA 2025).

---

[1] Petitioner's Petition lists Sheriff Arnott as a party by virtue of his administration of the Greene County Jail where Petitioner is currently detained. While Sheriff Arnott was not served in this case as of the date of this Order, the Court construes the proper party holding Petitioner in custody as the Department of Homeland Security through Immigration and Customs Enforcement. As DHS and ICE are utilizing the Greene County Jail to hold Petitioner and other detainees, the Court expects its ruling to apply to the Government and those aiding the Government regarding this specific case.

## II. <u>Jurisdiction</u>

Respondents argue that three statutory provisions—8 U.S.C. §§ 1252(e)(3), 1252(g) and (b)(9) deprive this Court of jurisdiction to consider Petitioner's claims. The Court disagrees.

Section 1252(e)(3), entitled "Challenges on validity of the system," limits the scope of judicial review of "orders under Section 1225(b)(1)" and limits venue to the U.S. District Court for the District of Columbia. Petitioner is "not challenging the lawfulness of any particular statute, regulation, or written policy or procedure." Thus, § 1252(e)(3) does not strip this Court of jurisdiction. *See Munoz Materano v. Arteta*, 2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025), at *10. Further, this statute only bars jurisdiction based on those held under 8 U.S.C. § 1225. However, the Court finds that Petitioner is being held under 8 U.S.C. § 1226. Therefore, 8 U.S.C. § 1252(e)(3) does not deprive the Court of Jurisdiction.

Sections 1252(g) and (b)(9) apply narrowly to systemic challenges to regulations implementing expedited removal, review of an order of removal, the decision to seek removal, or the process by which removability will be determined, not to constitutional or statutory claims which precede and are collateral to that process, including, as relevant here, unlawful arrest or detention. *See Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 U.S. Dist. LEXIS 135986, 2025 WL 1953796, at *7 (W.D.N.Y. July 16, 2025); see also *Hernandez-Cuevas v. Olson*, No. 4:25-cv-00830-BP, at 3 (W.D. Mo. Nov. 05, 2025) (citing 8 U.S.C. § 1252(b)(2)). Petitioner is not challenging any of these decisions or actions, so the above provisions do not deprive the Court of jurisdiction. This Court concludes it has jurisdiction over Petitioner's habeas petition.

## III. <u>8 U.S.C. §§1225 and 1226</u>

3

Petitioner argues that he is being detained in violation of immigration laws because he is not subject to mandatory detention under 8 U.S.S. §1225(b)(2) and is instead subject to the discretionary detention provisions of 8 U.S.S. §1226(a), which requires that he be given a bond hearing. Respondents argue Petitioner is properly detained because he entered and has remained in the United States without inspection or admission and is therefore deemed an "applicant for admission" to whom such mandatory detention under 8 U.S.C. § 1225(b)(2)(A) applies and is ineligible for a custody redetermination hearing before an IJ. Considering the parties' arguments, this Court joins the numerous federal courts that have rejected Respondent's interpretation of § 1225(b)(2).[2]

**Statutory Background**

Historically, noncitizens already residing in the country, such as Petitioner, were placed in standard removal proceedings and received bond hearings, unless their criminal histories rendered them ineligible under § 1226(c). *See Jennings v. Rodriguez,* 583 U.S. 281, 288 138 S.Ct. 830, 200 L.Ed.2d 122 (2018). Noncitizens who resided in the United States, but who had previously entered without inspection, were not deemed "arriving aliens" under § 1225(b), but were instead subject to § 1226(a). *See Jennings v. Rodriguez*, 583 U.S. 281, 287, 138 S.Ct. 830 ("In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking* admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the* country pending the outcome of removal proceedings under §§ 1226(a) and (c).") (emphasis added). In *Jennings*, the Court framed its discussion of §1225 as part of a process that

---

[2] As of the date of this Order the Court is not aware of any that have been appealed nor are there any appellate decisions. The Court however will highlight cases from District Courts in this Circuit as supporting the analysis in this case: *Barrajas v. Noem*, 2025 WL 2717650, at *3 (S.D. Iowa Sep. 23, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427, at *4 (N.D. Iowa Sept. 23, 2025); *Jose J.O.E. v. Bondi*, 2025 WL 2466670, at *6-7 (D. Minn. Aug. 27, 2025).

4

"generally begins at the Nation's borders and ports of entry, where the Government must determine whether a [noncitizen] seeking to enter the country is admissible." 583 U.S. at 287, 138 S.Ct. 830. Then, when discussing §1226, *Jennings* describes it as governing "the process of arresting and detaining" noncitizens who are living "inside the United States" but "may still be removed," including noncitizens "who were inadmissible at the time of entry." *Id.* at 288, 138 S.Ct. 830.

The legislative history behind §1226 also tends to support Petitioner's argument that it governs noncitizens like himself that reside in the United States but previously entered without inspection. Before IIRIRA passed, the predecessor statute to §1226(a) governed deportation proceedings for all noncitizens arrested within the United States. *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1247 (W.D. Wash. 2025) (citing 8 U.S.C. § 1252(a)(1) (1994) ("Pending a determination of deportability ... any [noncitizen] ... may, upon warrant of the Attorney General, be arrested and taken into custody."); *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) ("A deportation hearing was the 'usual means of proceeding against a[ ] [noncitizen] already physically in the United States[.]' ")). This predecessor statute, like §1226(a), included discretionary release on bond. *Rodriguez*, 779 F.Supp.3d at 1260 (citing § 1252(a)(1) (1994) ("[A]ny such [noncitizen] taken into custody may, in the discretion of the Attorney General ... be continued in custody ... [or] be released under bond[.]")). Upon passing IIRIRA, Congress declared that the new §1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond a[ ] [noncitizen] who is not lawfully in the United States." *Rodriguez*, 779 F.Supp.3d at 1260 (citing H.R. Rep. No. 104-469, pt. 1, at 229; *see also* H.R. Rep. No. 104-828, at 210 (same)). Because noncitizens like Petitioner were entitled to discretionary detention under §1226(a)'s predecessor statute and Congress declared its

scope unchanged by IIRIRA, this background supports Petitioner's position that he too is subject to discretionary detention under §1226(a).

Now, pursuant to the July 8, 2025, ICE memo entitled "Interim Guidance Regarding Detention Authority for Applicant for Admission," DHS and ICE deem any person who entered the United States without inspection as an "applicant for admission" under §1225(a), and therefore argue that they are subject to mandatory detention under §1225(b)(2)(A). The Court agrees with Petitioner that a plain reading of §1226(a) and an analysis of statutory construction support the argument that §1226(a) applies to him rather than §1225(b)(2).

### **Plain Language**

The plain language of §1225(b)(2) provides that "an alien *who is an applicant for admission*," shall be detained for a proceeding under §1229(a) of this title, "if the examining immigration officer determines that [the alien] *seeking admission* is not clearly and beyond a doubt entitled to be admitted." (emphasis added). Respondents' interpretation does not follow that plain language. Petitioner is not "seeking admission," he is already present in the U.S. *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025) (explaining that for §1225(b)(2)(A) to apply, "an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) not clearly and beyond doubt entitled to be admitted'"). One who is "seeking admission" is presently attempting to gain admission into the United States. *Id.* at *6 (discussing the plain meaning of "seeking"); *see also Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2371588, *7 (S.D.N.Y. Aug. 13, 2025) (interpreting "seeking admission" to mean a person who is actively "seeking" lawful entry. *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025) (" '[S]eeking admission' ... implies action – something that is currently occurring, and in this

6

instance, would most logically occur at the border upon inspection."). Through its reading of the statutory definition of "applicant for admission" in § 1225(a)(1), the Government has completely ignored the "seeking admission" language. *Lopez Benitez*, 2025 WL 2371588, at *6 (explaining how the Government's preferred interpretation would simply strike the phrase "seeking admission" from the statute in violation of the rule of statutory interpretation prohibiting a construction that turns terms into surplusage). Noncitizens who are present in the country for years, are not actively 'seeking admission.'" *See Hernandez-Cuevas v. Olson*, No. 4:25-cv-00830-BP, at 3 (W.D. Mo. Nov. 05, 2025) (citing *Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (quotations omitted)). Thus, as Petitioner has been in the United States for 8 years, he is not "seeking admission" within the meaning of §1225(b)(2)(A).

### Legislative Intent

Further, Congress specified that the mandatory detention provision of § 1225(b)(2)(A) applies to those "seeking admission" and did not use the phrase "applicant for admission" that it defined previously in § 1225(a)(1). *See J.A.M. v. Streeval*, 2025 WL 3050094, at *2 (M.D. Ga. Nov. 1, 2025) ("Had Congress intended for this subsection to apply to all applicants for admission, it could have said so by simply replacing the phrase "an alien seeking admission" with the term "an applicant for admission;").

### Statutory Construction

Moreover, Respondents' interpretation is inconsistent with recent amendments to § 1226. In 2025, Congress passed the Laken Riley Act, which added § 1226(c)(1)(E) and requires detention of aliens who are inadmissible pursuant to § 1182(a)(6)(A), (D), or (E). *Hernandez-Cuevas* (W.D. Mo. Nov. 5, 2025) at 6. But under the Respondent's interpretation of these provisions, such aliens

7

are already subject to mandatory detention under § 1225(b)(2)—which means the 2025 amendments to § 1226 have no purpose. *Id*. "[O]ne of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Id.* at 6 (citing *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up)). Moreover, "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Id.* at 6 (citing *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)).

For these reasons, Respondents' interpretation of §1225 is not supported by the plain language of the text, statutory construction, or legislative intent.[3] Thus, Petitioner is subject to the discretionary detention provisions of 8 U.S.C. §1226(a), not §1225.

### IV. <u>Administrative Procedure Act</u>

Because the Court finds it appropriate to grant habeas relief available under 28 U.S.C. §2241, the Court finds it unnecessary to engage in extended analysis of the remaining claims in the petition at this time, including any request for relief under the APA. *See Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *3 (D. Minn. Oct. 1, 2025).

### V. <u>The Due Process Clause</u>

Petitioner alleges his indefinite detention without an individualized hearing violates the Due Process Clause of the Fifth Amendment. The Court's conclusion that §1226 grants Petitioner the right to a bond hearing however is sufficient to remedy a Constitutional violation. There is no

---

[3] The Court also finds it persuasive that on the Notice to Appear, the box indicating, "You are an alien present in the United States who has not been admitted or paroled" is checked but not the box marked "You are an arriving alien." (Doc. 1-1. Pg. 6).

need to independently evaluate the compliance with the Due Process Clause under Respondents' detention policy.[4]

## VI. Temporary Restraining Order

In the Petition, Petitioner seeks an order enjoining Respondents from transferring Petitioner from the jurisdiction of the Kansas City Field Office of the Immigration & Customs Enforcement Office of Enforcement and Removal Operations ("ERO") and this District. Petitioner is currently in removal proceedings in the Kansas City Immigration Court. He argues his transfer could prevent him from attending timely court appearances. Respondents set forth no argument as to this claim.

In analyzing a request for a TRO, the Court weighs: 1) probability movant will succeed on the merits; 2) threat of irreparable harm to the movant absent injunction; 3) balance between threatened harm to the movant and harm the injunction would inflict on other interested parties; and 4) the public interest. *Dataphase Sys., Inc. v. C L Syst., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc). "No single factor is dispositive;" rather, the court must consider all factors to determine whether on balance they weigh towards granting the remedy. *Calvin Klein Cosmetics Corp. v. Lenox Labs.*, Inc., 815 F.2d 500, 503 (8th Cir. 1987).

The Court finds that a TRO in this case is appropriate. As discussed above, the Court has already found that movant will succeed on his Petition for Habeus Coprus by virtue of his INA argument that has been fully briefed by both parties. Further, the threat of irreparable harm to the movant absent injunction is high as any move from this district prior to a bond hearing would render this Order and Petitioner right to a bond hearing as meaningless. As to the balance between

---

[4] The Court has significant initial concerns regarding constitutionality of Respondents' detention policy. However, it is the Court's position that the relief Petitioner seeks can be granted without an adjudication of the issue.

9

Case 6:25-cv-00836-MDH   Document 10   Filed 11/18/25   Page 9 of 12

the threatened harm to the movant and the harm the injunction would inflict on other interested parties, the balance tips in favor of Petitioner. Respondents and other interested parties would not suffer by allowing Petitioner to have a bond hearing. Lastly, there is a public interest in allowing those who are detained pursuant to 8 U.S.C. § 1226 to be given a bond hearing as expressed and determined by Congress. For these reasons, the Court finds Petitioner's request for a TRO is appropriate.

## VII. <u>Attorneys' Fees</u>

Petitioner requests an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and 5 U.S.C. § 504. As the Court did not address the merits of the APA claim, fees are not available under 5 U.S.C. §504.

Pursuant to the EAJA, a court shall award to a prevailing party fees and other expenses incurred by that party in any civil action, brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C § 2412(d)(1)(A). To be eligible for fees under the EAJA, a petitioner must submit an application within thirty days of final judgment, and the petitioner's net worth must be less than two million dollars at the time the civil action was filed. *See id.* §§ (d)(1)(B), (d)(2)(B)(i). The EAJA was enacted with the purpose of removing the financial disincentive for individuals challenging or defending against government action and encouraging challenges to improper government action as a means of helping formulate better public policy. *See, e.g., Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." (citation omitted)); *Boudin v. Thomas*, 732 F.2d 1107, 1114 (2d Cir. 1984) ("The EAJA was passed partly to *encourage* challenges to improper actions by government

agencies. The drafters perceived legal actions as helping to formulate public policy." (citations omitted)).

As explained throughout, the Court finds the position of the United States is not substantially justified. The manner in which the provisions have historically been interpreted, legislative intent, statutory construction, and the plain text of the statutes all support that the United States is not substantially justified in its novel interpretation of §1225. Thus, Petitioner may pursue an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act.

## **CONCLUSION**

The Court concludes Petitioner is not subject to mandatory detention pursuant to §1225, and that he is entitled to a bond hearing pursuant to §1226. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED** as follows.

1. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and is instead subject to detention, if at all, pursuant to the discretionary provisions of 8 U.S.C. § 1226(a)(1).

2. Respondents must provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within ten (10) days of the date of this Order.

3. If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention or returned to a reasonable proximity of the geographical location of arrest.

4. Petitioner shall promptly report to the Court any failure to comply with this Order by Respondent.

5. Petitioner may submit an application for fees under the EAJA within thirty days of the entry of final judgment.

6. It is **FURTHER ORDERED** that Respondents are enjoined from relocating Petitioner outside the jurisdiction of this Court.

**IT IS SO ORDERED**.

DATED: November 18, 2025

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**